SAMPSON-BLADEN OIL CO., INC. v. GERALD WALTERS AND JOYCE WALTERS

No. 8613DC893

(Filed 16 June 1987)

**1. Rules of Civil Procedure § 56— summary judgment order—construed as partial summary judgment**

In an action for the balance due on an open account for fuel oil supplied during 1983 where defendants counterclaimed for overcharges and treble damages under N.C.G.S. § 75-1, *et seq.* for fuel oil supplied in 1982, an order of summary judgment entered the day before trial was for partial summary judgment affecting only the issue of defendants' debt for oil received during 1983.

**2. Rules of Civil Procedure § 15.1— amendment to counterclaim—no abuse of discretion**

In an action for the balance due on an open account for fuel oil supplied during 1983 where defendants counterclaimed for overcharges and treble damages under N.C.G.S. § 75-1 for fuel oil supplied in 1982, the trial court did not abuse its discretion by permitting defendants to amend their counterclaim to include overcharges made in 1981 where plaintiff had been notified more than a year earlier, when defendants answered the complaint, that the 1981 charges were an important factor in the case and it was unlikely that plaintiff was surprised or prejudiced by the amendment.

**3. Unfair Competition § 1— systematically overcharging customer—unfair trade practice**

Systematically overcharging a customer for fuel oil for two years in the amount of $2,795.30 is an unfair trade practice squarely within the purview of N.C.G.S. § 75-1.1.

**4. Judgments § 55— claim for overcharges—interest proper on overcharge—not on treble damages**

In an action for amounts due under an open account for fuel oil in which defendants counterclaimed for overcharges and won a judgment for unfair and deceptive trade practices, the trial court did not err by awarding defendants interest on the amount of the overpayments based on an implied contract to refund the overcharges, but should not have trebled the damages before calculating the interest.

APPEAL by plaintiff from *Jolly, Judge.* Judgment entered 28 February 1986 in District Court, BLADEN County. Heard in the Court of Appeals 4 February 1987.

Plaintiff sued defendants for the balance allegedly due on an open account for fuel oil supplied to them during 1983, and attached to the complaint an itemized, certified statement of the

account indicating that the amount owed was $4,080.22. In answering the complaint defendants in effect admitted making the purchases listed on plaintiff's itemized statement, but they asserted as a defense, setoff and counterclaim that plaintiff overcharged them for oil in 1982, and that as a consequence defendants were entitled to a credit and damages, trebled under G.S. 75-1, *et seq.* More specifically, defendants alleged that: For several years before 1983 the tobacco raised on their Bladen County farm was cured with oil obtained from plaintiff; during the 1981 crop year it began to appear that plaintiff was charging them for more oil than was delivered, but defendants then had no records to verify that fact; during the 1982 crop year they kept records and plaintiff charged them for approximately 2,600 more gallons of oil than they received; when confronted about the overcharge plaintiff agreed to adjust the 1982 bill according to the amount of oil used in curing defendants' 1983 tobacco crop; in curing their 1983 crop, 2,599 fewer gallons of fuel oil were used than plaintiff billed defendants for in 1982, and under the agreement defendants were entitled to a credit of $3,462.52; with that credit, considering the payments defendants had made on both the 1981 and 1982 bills, plaintiff had been overpaid in the amount of $170.13, which defendants were entitled to recover, and because plaintiff's practice of overcharging them was an unfair trade practice under the provisions of G.S. 75-1.1 they were also entitled to have the overpayment trebled under G.S. 75-16. Plaintiff denied all these allegations. After discovery was completed plaintiff moved for summary judgment in its favor, and following a hearing thereon an order of summary judgment was entered on 25 February 1986 holding that plaintiff was entitled to recover of defendants the $4,080.22 sued for in the complaint, together with interest thereon at the annual rate of 18%. The next day trial began on defendants' counterclaim and at that time defendants moved to amend their counterclaim to allege, as an unfair trade practice under Chapter 75 of the General Statutes, that plaintiff overcharged them for oil during 1981 in the amount of $2,400. Over plaintiff's objection the amendment was allowed and the trial on defendants' amended counterclaim concluded in defendants' favor. Evidence tending to show that plaintiff overcharged defendants in both 1981 and 1982 included the following: Defendants' oil tanks did not leak and no oil was stolen from them during the years plaintiff was their supplier. Plaintiff's truck driver

delivered oil to defendants' tanks only on certain days and left an invoice with each delivery; but the bill sent defendants for oil delivered to them in 1982 included deliveries that were purportedly made on irregular, nonscheduled days for which they received no invoices; in 1983, the procedure was adopted of having each invoice signed by both plaintiff's truck driver and one of the defendants, and in that year, with no other differences in the circumstances, the same barns being used each year and the amount of tobacco cured being substantially the same, about 2,500 less gallons of oil were used in curing their tobacco than plaintiff billed defendants for both in 1981 and 1982.

But defendants' evidence fell short of supporting the allegation that plaintiff agreed to adjust the 1982 bill according to the amount of oil used in 1983 and the judge declined to submit an issue about that to the jury. The only issues submitted were whether plaintiff charged defendants for more oil than was delivered in either 1981 or 1982, or both, and, if so, what the amount of the overcharge was. Upon the jury answering these issues "yes" and "$2,795.30," the court ruled as a matter of law that plaintiff's practice of overcharging defendants, as established by the verdict, was an unfair or deceptive trade practice under G.S. 75-1.1 and trebled the $2,795.30 overcharge under G.S. 75-16. Then after adding to defendants' recovery the interest deemed to be due thereon the court reduced it by the amount of plaintiff's recovery under the order of summary judgment, and entered final judgment in favor of defendants for the $5,465.94 difference.

*Young, Moore, Henderson & Alvis, by Edward B. Clark and David M. Duke, for plaintiff appellant.*

*Lee, Meekins & Viets, by Fred C. Meekins, Jr. and Junius B. Lee, III, for defendant appellees.*

PHILLIPS, Judge.

Other than a contention about the interest allowed on defendants' recovery, the assignments of error brought forward in plaintiff's brief support only these three contentions: (1) the order of summary judgment in plaintiff's favor the day before trial began disposed of the entire case, and thus deprived the court of jurisdiction to try defendants' counterclaim; (2) the court abused its discretion in permitting defendants to amend their counterclaim

the day trial began; (3) the court erred in ruling as a matter of law that overcharging defendants under the circumstances recorded was an unfair or deceptive trade practice under G.S. 75-1, *et seq.* None of these contentions has merit and we overrule them. In doing so we will not discuss plaintiff's other contentions that are not duly supported by an exception or assignment of error, as such matters are not properly before us. It is appropriate to note that plaintiff's appellate counsel did not participate in either the trial or preparation of the case.

[1] So far as the record indicates the contention that the order of summary judgment entered the day before trial disposed of the entire case was first made in a post trial motion a week later. Nothing in the order requires that interpretation; for it does not mention defendants' counterclaim and merely recites that during 1983 defendants received the merchandise listed on plaintiff's verified statement and owed plaintiff $4,080.22 therefor. Neither the record, the transcript, nor the conduct of the parties and counsel indicates that the order was intended to dispose of the entire case, or that anyone connected with the case so thought or maintained when it was entered. Though the complaint, answer, counterclaim and reply raised several issues of fact only one of those issues—the amount defendants owed plaintiff for oil supplied to them during 1983 raised by the complaint—was addressed by plaintiff's motion for summary judgment; and that motion was supported only by a verified statement of plaintiff's account with defendants for 1983. The verified statement merely lists the deliveries of oil made to defendants during 1983 and the charges made for them and does not mention defendants' *verified* counterclaim for a setoff and treble damages based on plaintiff's overcharges during 1982. Since the court had before it only the pleadings and a verified statement showing that defendants owed plaintiff $4,080.22 for oil supplied them in 1983 it was proper to enter an order of summary judgment disposing of that issue; but the court had no basis for disposing of any other issue in the case and did not undertake to do so. The recorded facts indicate that the court, parties and trial counsel all regarded the order as being one for partial summary judgment that affected only the issue of defendants' debt for oil received during 1983; for almost immediately after the order was entered the trial of defendants' counterclaim was begun without any objection from the plaintiff.

Only by regarding the order as being for partial summary judgment does the course followed by the court and counsel make sense; and only by regarding the order as being for partial summary judgment can the validity of both the order and judgment be upheld. But if the order is construed as attempting to dispose of the entire case it is a self-evident nullity, since plaintiff's evidence at the hearing did not even address, much less support, the dismissal of defendants' counterclaim.

[2] Nor did the court err in permitting defendants to amend their counterclaim to include overcharges made in 1981. Though the motion to amend was not made until the trial was ready to begin, plaintiff was notified more than a year earlier when defendants answered the complaint that its 1981 charges were an important factor in the case. For at that time defendants alleged that because the 1981 charges appeared to be excessive they kept up with the 1982 deliveries and ascertained that plaintiff was overcharging them. Under the circumstances it seems unlikely that plaintiff was either surprised or prejudiced by the amendment. In any event allowing the motion to amend was within the broad discretion that Rule 15, N.C. Rules of Civil Procedure, gives to our trial judges and was certainly no abuse of it. *Willow Mountain Corp. v. Parker*, 37 N.C. App. 718, 247 S.E. 2d 11, *disc. rev. denied*, 295 N.C. 738, 248 S.E. 2d 867 (1978).

[3] In discussing its contention that no unfair trade practice was established plaintiff argues, *inter alia*, that the evidence is not sufficient to support the jury's finding that plaintiff overcharged defendants. Since this contention is based upon assignments of error and exceptions that relate only to the court ruling as a matter of law that the overcharges the jury found plaintiff made constituted an unfair or deceptive trade practice under G.S. 75-1, *et seq.*, the sufficiency of the evidence is not before us and will not be decided. Though plaintiff strenuously argues otherwise it seems plain to us, and we so hold, that systematically overcharging a customer for two years, as the jury found was done here in the amount of $2,795.30, is an unfair trade practice squarely within the purview of G.S. 75-1.1, as our Supreme Court has interpreted it in several cases, including *Marshall v. Miller*, 302 N.C. 539, 276 S.E. 2d 397 (1981).

[4] Plaintiff's final contention—that the court erred in awarding interest on defendants' recovery from 15 September 1982 until the date of the judgment—has some merit, but not for the reason or to the extent argued. Plaintiff labels the interest allowed as "prejudgment" interest, and correctly argues that prejudgment interest is not allowable in this case because no statute authorizes it. The only statutory provisions authorizing prejudgment interest in recent years are those formerly contained in G.S. 24-5, which only applied to claims covered by liability insurance, and the provisions now contained in G.S. 24-5(b), which apply to compensatory damages in all actions other than contract, but do not apply to cases pending when the 1985 General Assembly enacted them, and this case has been pending since October 1984. But it does not appear to us either that the interest awarded defendants was prejudgment interest, as that term is generally understood, or that it was awarded under either the old or new version of G.S. 24-5(b). Apparently the court allowed interest under the provisions now contained in G.S. 24-5(a) and did so on the premise that defendants' counterclaim is based on contract; for these provisions, which have been in our statutes since 1786, authorize interest from the date of the breach in actions based on contract, and interest was allowed here not from 1 November 1984 when defendants' counterclaim was filed, but from 15 September 1982 when defendants' last overpayment was made. In awarding interest under that statute the court acted correctly up to a point; for under G.S. 24-5(a) amounts due by contract normally draw interest at the legal rate if not otherwise provided, and defendants' claim for money they overpaid plaintiff is based upon an implied promise by plaintiff to refund the overcharge. 70 C.J.S. *Payment* Sec. 114 (1987); *Allgood v. The Wilmington Savings & Trust Co.*, 242 N.C. 506, 88 S.E. 2d 825 (1955). Despite the implication in G.S. 24-5(a) that the fact finder must determine the amount of interest due in actions based on contract, it is immaterial that the jury did not compute the interest due in this instance; for, as our Supreme Court has held in many cases, whenever a recovery is had for breach of contract and the amount of damages is ascertained either from the contract or from evidence relevant to the inquiry interest, which any clerk can compute, should be added thereto as a matter of law. *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 194 S.E. 2d 521 (1973); *Hunt v. Hunt*, 261 N.C. 437, 135 S.E. 2d 195 (1964); *General Metals, Inc. v. Truitt Mfg. Co.*, 259 N.C. 709, 131

S.E. 2d 360 (1963); *Harris and Harris Construction Co. v. Crain and Denbo, Inc.*, 256 N.C. 110, 123 S.E. 2d 590 (1962); *Bond v. Pickett Cotton Mills, Inc.*, 166 N.C. 20, 81 S.E. 936 (1914). In this case a breach of implied contract occurred each time during 1981 and 1982 defendants overpaid plaintiff and the latter failed to immediately return the overpayment, and the amount of the overpayments having been ascertained from the evidence interest thereon immediately attached. But it attached only to the overcharges, the only money of defendants that plaintiff had the use of; it did not attach to the statutory penalty that was added to the overcharges. Allowing interest on the overpayments from the last breach until judgment was entered does not duplicate to any extent the recovery authorized by Chapter 75; as interest on the money plaintiff had the use of stopped when it was established that the Chapter had been violated.

In arriving at $5,465.94 as the amount finally due defendants from plaintiff the court followed this course: It trebled the $2,795.30 overcharges to $8,385.90, added interest on that amount at 8% from 15 September 1982 to the day judgment was entered ($2,320.24) for a gross recovery of $10,706.14; and then subtracted plaintiff's $4,080.22 recovery plus interest thereon of $1,159.98. The only error in this procedure was in allowing defendants interest at 8% on $8,385.90 for the period stated, rather than on $2,795.30. This error improperly increased defendants' net recovery by $1,551.03 and the judgment must be modified accordingly. To expedite matters, we herewith modify the judgment in defendants' favor to provide for their recovery from plaintiff of *$3,914.91*, rather than *$5,465.94*, and direct the District Court to correct its records accordingly.

Affirmed and modified.

Judges BECTON and JOHNSON concur.