TRAVIS T. BUMPERS AND TROY ELLIOT, ON BEHALF OF THEMSELVES AND ALL OTHERS
SIMILARLY SITUATED, PLAINTIFFS v. COMMUNITY BANK OF NORTHERN VIRGINIA,
DEFENDANT

No. COA08-1135-2

(Filed 6 September 2011)

**1. Unfair Trade Practices—loan discount fees—summary judgment**

The trial court did not err by granting summary judgment for plaintiffs on Chapter 75 claims based upon defendant charging a loan discount fee when no discount was provided. Defendant's conduct was actionable as an unfair or deceptive trade practice under N.C.G.S. § 75-1.1, the evidence in the record supported the summary judgment, and plaintiffs' claim was not preempted by federal legislation.

**2. Unfair Trade Practices—real estate closing fees—summary judgment**

The trial court erred by granting summary judgment to plaintiffs on Chapter 75 claims based upon fees charged by Title America at real estate closings. There was a genuine issue of material fact as to whether Title America overcharged for its closing fees.

**3. Class Actions—certification—federal injunction vacated**

In an action remanded on other grounds, it would be proper for the trial court to consider class certification on remand because federal orders barring prosecution as a class action were vacated.

On remand to the Court of Appeals from an opinion of the Supreme Court of North Carolina directing that this case be considered on the merits. Appeal by defendant from orders entered 22 April 2008 and 10 May 2008 by Judge John B. Lewis, Jr., in Wake County Superior Court granting summary judgment to plaintiffs on their Unfair and Deceptive Trade Practices (UDTP) claims. Originally heard in the Court of Appeals 25 February 2009.

*Hartzell & Whiteman, L.L.P., by J. Jerome Hartzell, and Financial Protection Law Center, by Mallam J. Maynard, for plaintiff-appellee Bumpers.*

*Ellis & Winters LLP, by Matthew W. Sawchak, Ballard Spahr Andrews & Ingersoll, LLP, by Darryl J. May, and Odin, Feldman & Pittleman, P.C., by F. Douglas Ross, for defendant-appellant.*

STEELMAN, Judge.

Where the undisputed evidence showed that defendant charged plaintiffs a loan discount fee for a loan that did not have a discounted interest rate, summary judgment in favor of plaintiffs on their Chapter 75 claims was proper. Where there were genuine issues of material fact as to whether Title America's loan closing fees were excessive, we reverse the granting of summary judgment on that claim, and vacate the award of damages pertaining to that claim. Upon remand, the trial court may consider the question of class certification.

## I. Factual and Procedural Background

This case was initially filed in Wake County Superior Court on 13 September 2001. Since that time, it has been removed to federal court twice, undergone substantial litigation in the federal courts, and was ultimately remanded to the Wake County Superior Court for determination of the Unfair and Deceptive Trade Practices claims that are the subject of this appeal.

Travis T. Bumpers (Bumpers) and Troy Elliott (Elliott) each closed second mortgage loans with Community Bank of Northern Virginia (Community Bank) in 1999.

Bumpers responded to a mailed solicitation from Community Bank advertising loans. He called the 800 number, submitted a loan application over the phone, made a few more telephone calls, faxed requested documents, and then was directed to a women's lingerie shop to sign the closing documents before a notary public who worked at the store. Bumpers was approved for a $28,450.00 loan, with an interest rate of 16.99%. Title America, LLC (Title America) provided the closing services for the loan.

Community Bank and Title America charged Bumpers fees totaling $4,827.88. The fees paid to Community Bank included a loan orig-

ination fee of $2,062.63, a "loan discount" fee of $1,280.25, an application fee of $95.00, and an underwriting fee of $185.00. The fees paid to Title America included a settlement or closing fee of $225.00, an abstract or title search fee of $120.00, a title examination fee of $300.00, an overnight fee of $25.00, a document review fee of $275.00, and a processing fee of $260.00.

Elliott also responded to a mailed solicitation from Community Bank advertising loans. He called the 800 number because of the 12.99% interest rate advertised in the mailed solicitation. He submitted a loan application over the phone, made a few more telephone calls, faxed requested documents, and then went to the residence of Tyler Toulane (Toulane) to execute the loan documents. Toulane advised Elliott that he was a notary public. Elliott was approved for a $35,000.00 loan, with a 12.99% interest rate. Title America provided closing services for the loan.

Community Bank and Title America charged Elliott fees totaling $5,650.00. The fees paid to Community Bank included a loan origination fee of $2,800.00, a "loan discount" fee of $1,400.00, an application fee of $95.00, and an underwriting fee of $185.00. The fees paid to Title America included a settlement or closing fee of $225.00, an abstract or title search fee of $120.00, a title examination fee of $300.00, an overnight fee of $25.00, a document review fee of $250.00, and a processing fee of $250.00.

In September 2001, plaintiffs filed a lawsuit against Community Bank and Chase Manhattan Bank in Wake County Superior Court asserting violations of Chapter 24 of the North Carolina General Statutes based on excessive fees, violations of N.C. Gen. Stat. § 53-238 and N.C. Gen. Stat. § 75-1.1 based upon duplicative fees, violations of N.C. Gen. Stat. § 53-238 and N.C. Gen. Stat. § 75-1.1 based upon a loan discount fee charge when the loan rate was not discounted, and violations of N.C. Gen. Stat. §§ 24-1.1A(c)(1)(e), 24-8(d), 53-238[1], and 75-1.1 based upon the fees charged by Title America.

In October 2001, this case (hereinafter *Bumpers*) was removed to the United States District Court for the Eastern District of North Carolina for the first time. In August 2002, the case was remanded to

1. Plaintiffs' complaint recites N.C. Gen. Stat. § 53-238; however, this statute was repealed in 1988. 1987 N.C. Sess. Laws ch. 1017, § 1. The applicable provision has been recodified in Article 19A and subsequently in Article 19B of Chapter 53. Plaintiffs' claim for relief based on this statute was dismissed by the Wake County Superior Court by order filed 1 May 2003.

Wake County Superior Court. In April 2003, the trial court entered an order granting defendants' motions to dismiss as to all of plaintiffs' claims that were based upon either Chapter 24 of the General Statutes or N.C. Gen. Stat. § 54-238, and denying defendants' motions to dismiss as to the claims under N.C. Gen. Stat. § 75-1.1. Plaintiffs then filed a notice of withdrawal as to the claims that were dismissed by the April 2003 order and waived all rights of appeal with respect to those claims.[2]

In June 2003, Community Bank removed the case to the United States District Court for the Eastern District of North Carolina for a second time. Plaintiffs filed a motion to remand the case to state court that was not immediately ruled upon.

Meanwhile, several cases had been commenced against Community Bank in the United States District Court for the Western District of Pennsylvania, and Community Bank was seeking to join all of these claims throughout the United States into one case. *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 284-86 (3rd Cir. 2005). In July of 2003, a proposed national class settlement was submitted to the federal district court in Pennsylvania. Plaintiffs moved to intervene in *In re Community Bank*, were allowed to intervene, and filed objections to the proposed settlement.

In August 2003, the parties consented to transfer venue of *Bumpers* from the Eastern District of North Carolina to join the national class action against Community Bank and other defendants in the Western District of Pennsylvania.

In December 2003, the federal court approved the class action settlement, which was subsequently set aside and remanded for further proceedings in August 2005 by the United States Third Circuit Court of Appeals. *In re Cmty. Bank of N. Va.*, 418 F.3d at 293, 320. In August 2006, the federal class representatives filed a joint motion for approval of modified and enhanced settlement agreement with Community Bank and other defendants, which the United States District Court conditionally approved in January 2008.

On 22 January 2008, the instant case was transferred to the United States District Court for the Eastern District of North Carolina for remand to the Wake County Superior Court for lack of subject

---

2. Plaintiffs gave this notice of withdrawal and waiver of right to appeal to ensure that all parties and the court were clearly informed that plaintiffs did not seek relief under Chapter 24 of the General Statutes or 12 U.S.C. §1831(d), and would not seek relief under these statutes on appeal.

matter jurisdiction because "plaintiffs' state court complaint sounded purely in North Carolina statutory and common law."

Plaintiffs voluntarily dismissed the claims asserted against Chase Manhattan Bank on 11 February 2008. Bumpers and Elliott then sought to have their motion for class certification and motion for summary judgment ruled upon in state court. In March 2008, the United States District Court for the Western District of Pennsylvania issued an injunction prohibiting Bumpers and Elliott from proceeding with class certification efforts but declined to halt proceedings on the summary judgment motion.

On 22 April 2008, the trial court granted plaintiffs' motion for partial summary judgment on the issues of liability, holding that Community Bank's practice of charging a loan discount fee without providing a loan with a discounted interest rate constituted an unfair and deceptive trade practice under Chapter 75. This order further held that Community Bank and Title America's duplicative and excessive fees constituted systematic overcharging also in violation of Chapter 75. In a second order filed 15 May 2008, each of the plaintiffs were awarded damages and treble damages pursuant to N.C. Gen. Stat. § 75-16, along with interest on the excess settlement charges, but not upon the trebled amount.

On 14 August 2008, the United States District Court for the Western District of Pennsylvania entered final orders approving and enforcing the national class settlement. The terms of this settlement agreement prohibited class members from pursuing further litigation against Community Bank. Elliott remained a member of that certified class, and appealed the district court's rulings on the ground that the nation-wide settlement does not afford North Carolina borrowers the relief to which they are entitled under North Carolina law. As a result, Elliot is not participating in the instant appeal. Bumpers "opted out" of the nation-wide class, is not affected by the order enforcing the settlement, and is defending this appeal.

Defendant appealed the trial court's orders granting summary judgment to this Court. In May 2009, this Court held that defendant's appeal constituted a non-appealable interlocutory order, and dismissed the appeal. *See Bumpers v. Cmty. Bank of N. Va.*, 196 N.C. App. 713, 675 S.E.2d 697 (2009). Our Supreme Court reversed and remanded, and directed that we consider the case on the merits. *Bumpers v. Cmty. Bank of N. Va.*, 364 N.C. 195, 695 S.E.2d 442 (2010).

On 22 September 2010 (subsequently amended on 20 October 2010), the United States Court of Appeals for the Third Circuit filed an opinion in *In re Cmty. Bank of N. Va.*, 622 F.3d 275 (3rd Cir. 2010). This opinion once again vacated the class certification decision of the District Court and remanded the case to the District Court for further proceedings. The opinion of the Third Circuit specifically addressed the objections of the North Carolina class members, including Elliot. Upon remand, the District Court was directed to "consider the North Carolina Objectors' arguments and determine whether the creation of a subclass is necessary to represent their interests adequately." *In re Cmty. Bank*, 622 F.3d at 311.

On 29 September 2010, Bumpers filed a Rule 60(b) motion in the trial court seeking an amendment to the trial court's summary judgment order to allow class certification proceedings. On 25 January 2011, the trial court entered a document styled as "Statement of Trial Court Concerning Rule 60(b) Motion." In this order, Judge Lewis stated if he currently had jurisdiction over the case he would be inclined to make the following rulings: (1) the order granting partial summary judgment would be modified to reflect that all federal injunctions against class proceedings have now expired or been vacated; and (2) the trial court would entertain motions for class certification and consider class relief at a future date.

On 10 February 2011, this Court entered an order directing that the parties submit supplemental briefs concerning the developments in this case and related cases since the remand of this case by the North Carolina Supreme Court. Defendants submitted a supplemental brief on 1 March 2011, and plaintiff submitted a supplemental brief on 21 March 2011.

This matter is before the Court upon defendant's appeal of the trial court's order of partial summary judgment.

## II. Standard of Review

"On appeal, an order allowing summary judgment is reviewed *de novo*." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004) (citation omitted). Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). "In ruling on a motion for summary judgment, 'the court may consider the pleadings, depositions, admissions, affidavits, answers to interrogatories, oral testimony and documen-

tary materials.' " *Howerton*, 358 N.C. at 470, 597 S.E.2d at 693 (quoting *Dendy v. Watkins*, 288 N.C. 447, 452, 219 S.E.2d 214, 217 (1975)). The evidence must be considered in the light most favorable to the non-moving party. *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003).

### III. Loan Discount Fee

[1] In its first argument, defendant contends that the trial court erred in granting summary judgment in favor of plaintiffs on their Chapter 75 claims based upon defendant charging a loan discount fee where no discount of the interest rate was provided. We disagree.

### A. Actionability under Chapter 75

Defendant contends that plaintiffs' claim is based upon a misrepresentation, and that because plaintiffs did not demonstrate actual reliance on Community Bank's representation regarding the loan discount fee, they cannot prove that defendant's unfair and deceptive trade practice proximately caused their injury.

N.C. Gen. Stat. § 75-1.1(a) (2009) states that "unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." "In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." N.C. Gen. Stat. § 75-1.1; *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citation omitted).

### i. Unfair and Deceptive Trade Practice

"A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Id.* (citation omitted). The determination of whether an act or practice is unfair or deceptive under § 75-1.1 is a question of law for the court. *Ellis v. Northern Star Co.*, 326 N.C. 219, 226, 388 S.E.2d 127, 131, *reh'g denied*, 326 N.C. 488, 392 S.E.2d 89 (1990). This Court has held that systematic overcharging is an unfair trade practice squarely within the purview of N.C. Gen. Stat. § 75-1.1. *Sampson-Bladen Oil Co. v. Walters*, 86 N.C. App. 173, 177, 356 S.E.2d 805, 808, *disc. review denied*, 321 N.C. 121, 361 S.E.2d 597 (1987). In *Sampson-Bladen Oil Co.*, this Court found a violation of § 75-1.1 where plaintiff charged defendants for approximately 2,600 more gallons of oil than plaintiff delivered to defendants over a two-year period. *Id.* In the instant case, plaintiffs' claim is

based upon Community Bank charging them for something that they did not receive (i.e. charging a "loan discount fee" where there was no evidence that plaintiffs received a discounted interest rate on the loan). Defendant's conduct is actionable as an unfair or deceptive practice under § 75-1.1.

### ii.  Affecting Commerce

"Commerce" is broadly defined, and with few exceptions, "includes all business activities, however denominated . . . ." N.C. Gen. Stat. § 75-1.1(b) (2009). The relationship between a creditor and borrower, and the activities appurtenant thereto, affect commerce. *See, e.g., Johnson v. Insurance Co.*, 300 N.C. 247, 261-62, 266 S.E.2d 610, 620 (1980), *overruled on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988). Accordingly, the second prong of N.C. Gen. Stat. § 75-1.1 is met.

### iii.  Proximate Cause

Defendant argues that plaintiffs cannot prove that defendant's conduct proximately caused plaintiffs' injury, because plaintiffs' claim is based on a misrepresentation, and plaintiffs did not demonstrate actual reliance on the misrepresentation.

Actual reliance is not ordinarily required to recover for a violation of N.C. Gen. Stat. § 75-1.1. *See, e.g., Stetser v. TAP Pharm. Prods. Inc.*, 165 N.C. App. 1, 21, 598 S.E.2d 570, 584 (2004) (noting that while North Carolina does not require reliance by the plaintiff to successfully pursue a claim under § 75-1.1, other states that have similarly-crafted statutes do); *cf. Cullen v. Valley Forge Life Ins. Co.*, 161 N.C. App. 570, 580, 589 S.E.2d 423, 431 (2003) (holding that actual reliance is not required to establish injury under N.C. Gen. Stat. § 58-63-15(1) (2001), which governs the unfair methods of competition and unfair and deceptive acts or practices in the business of insurance), *disc. review denied sub nom. Santomassimo v. Valley Forge Life Ins. Co.*, 358 N.C. 377, 598 S.E.2d 138 (2004).

However, "[w]here an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains." *Tucker v. Blvd. at Piper Glen L.L.C.*, 150 N.C. App. 150, 154, 564 S.E.2d 248, 251 (2002) (citation omitted). While defendant contends that plaintiffs' claims regarding the loan discount fee are based on a misrepresentation, we find the

facts of this case to be similar to those in *Sampson-Bladen Oil Co.*, discussed *supra*. In the instant case, the essence of plaintiffs' claims regarding the loan discount fee are not that they were induced by a misrepresentation made by defendant, but rather that they were charged for a product that was never delivered. As we held in *Sampson-Bladen Oil Co.*, this type of systematic overcharging constitutes a violation of N.C. Gen. Stat. § 75-1.1. We hold that where a defendant charges customers fees for a product that was never provided, defendant's conduct proximately causes injury to those customers.

This argument is without merit.

### B.  Summary Judgment

Defendant contends that the evidence in the record did not support the trial court's grant of summary judgment to plaintiffs on the claim based upon the "loan discount fee."

According to the United States Department of Housing and Urban Development's ("HUD") "Buying Your Home, Settlement Costs and Helpful Information," a "loan discount is a one-time charge imposed by the lender or broker to lower the rate at which the lender or broker would otherwise offer the loan to you." The undisputed evidence in the record demonstrates that plaintiffs did not receive a discounted interest rate on the loan as a *quid pro quo* for paying the loan discount fee.

### C.  Federal Preemption

Defendant next contends that the portion of plaintiff's UDTP claim based upon the loan discount fee was preempted by section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDA), 12 U.S.C. § 1831d (2006).

DIDA was enacted by Congress, in part, to prevent discrimination against state-chartered banks. 12 U.S.C. § 1831d(a) (2006); *Greenwood Trust Co. v. Com. of Massachusetts*, 971 F.2d 818, 826 (1st Cir. 1992), *cert. denied*, 506 U.S. 1052, 122 L. Ed. 2d 129 (1993). It achieved this by allowing state-chartered banks to charge the maximum interest rate permitted under the laws of their home states; thus preempting state law usury claims against out-of-state chartered banks:

> In order to prevent discrimination against State-chartered insured depository institutions, . . . such State bank or such insured branch of a foreign bank may, notwithstanding any State

constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, . . . at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.

12 U.S.C. 1831(d)(a) (2006). Federal courts have held that DIDA exempts out-of-state banks from state usury laws establishing maximum permissible interest rates. *See Vaden v. Discover Bank*, 556 U.S. 49, \_\_\_, 173 L. Ed. 2d 206, 215 (2009) ("Section 27(a) prescribes the interest *rates* state-chartered, federally insured banks like Discover can charge, 'notwithstanding any State constitution or statute which is hereby preempted.' ") (emphasis added); *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 295 (3d Cir. 2005) ("Likewise, § 521 of DIDA completely preempts any state law attempting to limit the amount of interest and fees a federally insured-state chartered bank can charge.") (citation omitted).

We first note that in its order of remand, filed 24 January 2008, the United States District Court for the Western District of Pennsylvania held that plaintiffs' claims were state law claims, specifically holding that they were not preempted by DIDA. The federal court held that plaintiffs' claims were not claims for usury, but were claims for charging fraudulent fees; specifically "discount rate fees although a discount rate was not given." While we are not bound by this ruling, *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 647, 165 L. Ed. 2d 92, 106-07 (2006), we find its reasoning to be persuasive.

We hold that the portion of the plaintiffs' UDTP claim based upon the charging of a loan discount fee for a discounted interest rate that was in fact never received was not preempted by DIDA. We reject defendant's assertion that under DIDA, "interest" should be construed so broadly as to encompass any fees connected with the loan.

This argument is without merit.

### IV.  Title America's Fees

[2] In its second argument, defendant contends that the trial court erred in granting summary judgment to plaintiffs on their Chapter 75 claims based upon fees charged by Title America. We agree.

### A.  Overcharging of Fees

The trial court's order relied upon a 1998 survey of the North Carolina Bar Association, and the affidavit and deposition testimony

of Nancy Guyton (Guyton), a certified real estate specialist in North Carolina to conclude that the closing fees charged by Title America were excessive and constituted "systematic overcharging." The trial court further concluded that "Title America, LLC was Community Bank's agent," and thus attributed Title America's "systematic overcharging" to defendant.

We hold that there were genuine issues of material fact concerning whether Title America's closing fees were excessive. In her affidavit, Guyton stated that "the fees charged to Mr. Bumpers and Mr. Elliot for services rendered by Title America, LLC, were substantially in excess of a reasonable fee and were substantially in excess of what would have been charged for closing services for such loans by North Carolina attorneys." She further stated that the reasonable and customary cost of these closing services "would not have exceeded $400.00."

In her deposition, Guyton acknowledged that in 1999 to close a second mortgage real estate loan would require 5-10 hours of attorney and staff time. If this was billed at the normal rate for attorney and paralegal time, the fee for a closing would have been $850-$1500. She advanced a twofold rationale for charging substantially less than the amount of time involved would indicate: (1) "[t]he market would not bear higher costs;" and (2) "it's going to generate other business with your firm in some form or fashion."

Based upon the above testimony of Guyton, there was a genuine issue of material fact as to whether Title America overcharged for its closing fees. It was error for the trial court to enter summary judgment in favor of plaintiff on the question of overcharging of fees by Title America.

## V. Advisory Ruling of the Trial Court

[3] The trial court ruled that it was inclined to entertain motions for class certification in this case. The class certification aspects of this case were blocked by the rulings of the federal courts until 22 September 2010, when the Third Circuit vacated the orders of the United States District Court for the Western District of Pennsylvania that had barred the prosecution of the instant case as a class action. *In re Cmty. Bank of N. Virginia,* 622 F.3d 275 (3d Cir. 2010), *as amended* (Oct. 20, 2010). Since this case is being remanded to the trial court, upon remand it would be proper for the trial court to consider the issue of class certification.

## V.  Conclusion

We affirm the trial court's grant of summary judgment in favor of plaintiffs on their claims under § 75-1.1 based upon the loan discount fee charged by Community Bank. We reverse the trial court's grant of summary judgment on plaintiffs' § 75-1.1 claims based on the fees charged by Title America, vacate the portion of the award of damages based on that claim, and remand for further proceedings consistent with this opinion.

Defendant does not argue its remaining assignments of error, and they are therefore deemed abandoned pursuant to N.C.R. App. P. 28(b)(6).

AFFIRMED IN PART, REVERSED, and VACATED, IN PART.

Judges BRYANT and ELMORE concur.