Justice HUDSON
dissenting.
Because my review of the record persuades me that the trial court properly granted plaintiffs’ motion for summary judgment on their claims regarding the loan discount fee, and because I conclude plaintiffs have sufficiently pleaded a claim for excessive pricing under N.C.G.S. § 75-1.1,1 respectfully dissent.
The Court of Appeals held that summary judgment for plaintiffs was appropriate on their claims that they were wrongly charged a loan discount fee. Although the majority here concludes that genuine issues of material fact remain, I disagree. On this issue the record reveals that plaintiffs did not receive a discounted interest rate despite being charged a loan discount fee. On the Form 1008, a standard form created by Fannie Mae, the “no” block is checked in the “bought-down rate” box. In addition, the interest rate for which plaintiffs qualified was the interest rate they received; no further rate reduction is noted on the Form 1008 or elsewhere; the “qualifying rate” stated is the rate they ultimately received; and in addition to the “no” block being checked for the “bought-down rate,” the space to show a “bought-down rate” was left blank. No evidence to the contrary has been produced.
Defendant and the majority cite to evidence they contend shows otherwise. For example, defendant offers the affidavit of John Grace in an attempt to contradict plaintiffs’ interpretation of the Form 1008; however, the affidavit does not actually contradict the form. At no point does Mr. Grace say that plaintiffs actually received a discounted rate; instead, he attempts to explain that the “bought-down rate” space on the form refers to a temporary rate reduction, not a perma *94 nent one. Further, in deposition testimony in a different but similar case, Mr. Grace testified that a “loan discount fee” is the same thing as a “loan origination fee.” Despite this testimony and defendant’s claims that the two terms are “often related loan terms,” HUD has clearly defined the two terms as having very different meanings. U.S. Dep’t of Hous. & Urban Dev., Office of Hous. — Fed. Hous. Admin., Buying Your Home: Settlement Costs and Helpful Information (June 1997). According to HUD, a “loan origination fee” is a fee that “covers the lender’s administrative costs in processing the loan.” Id. § III.A. (“Specific Settlement Costs”). A “loan discount fee” is a “onetime charge imposed by the lender or broker to lower the rate at which the lender or broker would otherwise offer the loan to you.” Id. Moreover, as the majority points out in footnotes 1 and 3, plaintiffs each paid two separate amounts, $2,062.63 and $1,280.25, respectively, by plaintiff Bumpers, and $2,800.00 and $1,400.00, respectively, by plaintiff Elliot. Neither of these attempts to contradict plaintiffs’ evidence creates a genuine issue of material fact regarding whether plaintiffs were charged for a discount rate they did not receive. I disagree that the statements by defendant’s employee “draw [the] inference into question” about the rate plaintiffs actually paid because Mr. Grace’s testimony and affidavit do not appear to address that point at all. I would therefore hold that the trial court was correct in granting summary judgment for plaintiffs on their claim regarding the loan discount fee.
Further, I would not hold that actual reliance is a necessary element of plaintiffs’ Section 75-1.1 claims that are based on systematic overcharging rather than misrepresentation.[1] First, the plain language of the statute does not require reliance. Section 75-1.1(a) simply states: “Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.” N.C.G.S. § 75-1.1(a) (2011). Section 75-16, which gives force to Section 75-1.1, also contains no actual reliance language; it provides a right of action to anyone who is “injured.” Id. § 75-16 (2011).
*95 Second, I agree with the Court of Appeals that this case is factually similar to Sampson-Bladen Oil Co. v. Walters, 86 N.C. App. 173, 356 S.E.2d 805 (1987). There the Court of Appeals held that it was an unfair trade practice for an oil company to charge its customers for oil they were not receiving. Id. at 177, 356 S.E.2d at 808-09. Here, contrary to what the majority asserts, the same thing has happened: defendant charged for a product that plaintiffs did not receive.
I also disagree with the majority that summary judgment was appropriate for defendant on plaintiffs’ N.C.G.S. § 75-1.1 claim based on excessive pricing. I would hold that plaintiffs have articulated such a claim and would remand to the trial court for further proceedings because genuine questions of material fact remain.
Section 75-1.1(a) states: “Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.” As this Court has previously noted, the legislature’s statement of purpose when it enacted the statute was
“to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all level[s] of commerce be had in this State.”
Bhatti v. Buckland, 328 N.C. 240, 245, 400 S.E.2d 440, 443 (1991) (alteration in original) (quoting Threatt v. Hiers, 76 N.C. App. 521, 522, 333 S.E.2d 772, 773 (1985), disc. rev. denied, 315 N.C. 397, 338 S.E.2d 887 (1986)). Further, section 75-16, which establishes a civil cause of action for violations of section 75-1.1, was enacted “to create a new, private cause of action for aggrieved consumers since traditional common law remedies were often deficient.” Winston Realty Co. v. G.H.G., Inc., 314 N.C. 90, 95, 331 S.E.2d 677, 680 (1985) (citations omitted). These are broad statutes meant to protect consumers from a wide range of unfair trade practices. There is nothing in these provisions to suggest that excessive pricing cannot give rise to a cause of action under the statute.
While the majority ultimately holds that excessive pricing could constitute a violation of section 75-1.1, I write to highlight that the language of N.C.G.S. § 75-38 does not prohibit a claim for excessive pricing in circumstances other than those articulated in that portion of N.C.G.S. Chapter 75. Defendant argues that by enacting a statute *96 that allows claims for excessive pricing in limited circumstances, such as a state of emergency, the legislature clearly did not intend to allow claims for excessive pricing in circumstances not named by the statute. However, I do not find this reasoning persuasive. Section 75-38 indicates a desire to tightly regulate emergency market situations but there is nothing in the statute to suggest that other market situations cannot be similarly regulated in addition. The mortgage industry is one such “other” market, and our legislature has already enacted several statutes to regulate it. For example, N.C.G.S. § 24-8(d) prohibits “unreasonable compensation” when setting the amount of mortgage brokers’ fees.[2] Buying a home is a traditionally important transaction and, given the recent mortgage lending crisis, it is not unreasonable for state legislatures to want to ensure fair practices among lenders.
I am also not convinced that allowing claims for excessive pricing would force trial courts to set price ceilings or lead to the creation of judicially unmanageable standards, as argued by defendant. As stated above, section 75-38 allows claims for excessive pricing under certain circumstances, and while that statute does give some guidance on how pricing is determined to be excessive, it leaves the ultimate decision to the discretion of the trial court. If the legislature placed that decision in the hands of a trial court in some circumstances, I see no reason the trial court could not make a similar determination in other circumstances.
I would also note that this Court need not hold that excessive pricing can support a claim under Section 75-1.1 for all types of consumer transactions. Each market is different and practices vary across markets. Recognizing this, this Court has observed that “[w]hether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace.” Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) (citation omitted). In this case we must simply consider whether the actual fees charged by defendant constitute an unfair or deceptive trade practice. Here, given the broad language of section 75-1.1 and the legislature’s existing regulation of the mortgage lending industry, I would hold that plaintiffs’ claims for excessive pricing should be allowed to proceed.
*97 However, as a result of Nancy Guyton’s affidavit and testimony, genuine issues of material fact remain regarding whether defendant’s fees were excessive. While Ms. Guyton’s affidavit states that the fees charged to plaintiffs (amounts of $1,180.00 and $1,145.00) were “substantially in excess of a reasonable fee and were substantially in excess of what would have been charged for closing services for such loans by North Carolina attorneys” and placed the maximum customary cost for the services provided here at not exceeding four hundred dollars, Ms. Guyton stated in her deposition that given the hours spent on a closing and the normal rate for attorney time, a typical residential closing cost would have been between eight hundred and fifty dollars to fifteen hundred dollars. She did not discuss reasonable fees for closings performed by non-attorneys.. Given this omission, I would hold that genuine issues of material fact remain regarding whether defendant overcharged for its closing fee and would remand accordingly.
For the reasons stated above, I respectfully dissent.

. Plaintiffs’ Second Claim for Relief states in pertinent part:
23. The various fees charged to the named plaintiffs, and to members of the plaintiff class, are duplicative in that (among other things) the origination fee, the application fee, the underwriting fee, the processing fee, the closing fee and the document review fee are separate fees charged for overlapping functions and/or for the same function. Such fees are neither necessary nor reasonable charges, and violate applicable law limiting fees, G.S. 53-238 and G.S. 75-1.1.

. While plaintiffs have relinquished any claims under section 24-8, I do not believe we are barred from considering how that statute informs' our reading of section 75-1.1 claims.