BERGER, Judge.
On May 12, 2017, Purnima Sanghrajka ("Plaintiff Sanghrajka") and Cary Foods, Inc. (collectively, "Plaintiffs") filed suit against Family Fare, LLC and M.M. Fowler, Inc. (collectively, "Defendants") asserting a violation of the North Carolina Unfair and Deceptive Trade Practices Act, and claims for rescission of contract, fraud based on intentional misrepresentation or concealments, negligent misrepresentation, and a breach of the duty of good faith and fair dealing. Defendants filed a motion to dismiss all of Plaintiffs claims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, and an alternative motion for judgment on the pleadings pursuant to Rule 12(c). On September 29, 2017, the trial court granted Defendants' motion, holding that the one year limitation period to file suit in the parties' contract had expired prior to initiation of this action. Plaintiffs timely appealed.
Factual and Procedural Background
Since 2006, Plaintiffs have operated a convenience store located at 4525 Chapel Hill Boulevard in Durham, North Carolina (the "Garrett Road store"). The Garrett Road store was owned and controlled by Defendants. In 2013, Defendants decided to change Plaintiffs' status from "contract operators" to franchisees. Defendants scheduled a series of meetings to inform Plaintiffs about the change. According to Plaintiffs' Complaint, Plaintiff Sanghrajka was not included in these initial meetings. Plaintiff Sanghrajka is the sole shareholder, officer, and director of Plaintiff Cary Foods, Inc.
In late November 2013, Plaintiff Sanghrajka met with Defendant and was told that, similar to the other "contract operators," Plaintiff Sanghrajka was going to be converted to a franchisee. Unlike the other "contract operators," however, Plaintiff Sanghrajka was told that she could only continue operating the Garrett Road store if she also began operating a store located at 1201 Raleigh Road in Chapel Hill (the "Glen Lennox store"), which was an under-performing store located in an unfavorable area. At this meeting, Plaintiff Sanghrajka was also provided with Defendants' Franchise Disclosure Documentation ("FD" documentation) and Defendants' Family Fare Franchise Agreement ("Franchise Agreement").
On December 4, 2013, Defendants again provided Plaintiff Sanghrajka with the same FD documentation given to the other "contract operators" being converted to franchisees. In it, Plaintiffs were required to pay Defendants "a transfer fee equal to 10% of the purchase price of the franchise."
On December 19, 2013, Plaintiff Sanghrajka met with Defendants to execute the Franchise Agreement, store leases, and other franchise documentation. On the same day, Defendants gave Plaintiff Sanghrajka a First Amendment to Family Fare Franchise Agreement (the "Addendum"). It was the first time Plaintiff had seen the Addendum and it changed the transfer fee from 10% to "50% of the purchase price." According to Plaintiffs' Complaint, Defendants told Plaintiff that "if the 'addendum' setting forth the 50% 'transfer fee' was not signed at that time, the [P]laintiffs would need to immediately cease operations at the Garrett Road store, and vacate that store[.]" Plaintiff signed the Addendum and Franchise Agreement that day.
After operating both the Garrett Road store and Glen Lennox store as franchisees for more than two years, Plaintiffs decided to sell the franchise. On September 2, 2016, Plaintiffs informed Defendants that Plaintiffs had entered an agreement to sell the franchise, which included both the Garrett Road store and Glen Lennox store, for a sale price of $ 380,000. The closing date was set for December 1, 2016. According to Plaintiffs' Complaint, Defendants informed Plaintiffs that they "would not approve of [P]laintiffs' prospective buyer, nor allow any sale by the [P]laintiffs to occur unless:"
a. The [P]laintiffs agreed to pay the defendants a 50% 'transfer fee'; and
b. The [P]laintiffs' buyer agreed to accept the imposition of a 50% transfer fee on any future sale by the buyer, which demand of the [D]efendants' resulted in a significant reduction of $ 30,000 in the sale price the buyer was willing to pay to the [P]laintiffs.
Per Plaintiffs' Complaint, the parties subsequently agreed that:
a. The sale of the [P]laintiffs' franchise would be allowed subject to the conditions of subpart b. and c. below agreed to; and
b. The [P]laintiffs would pay over to the defendants an amount equivalent to 10% of the franchise sale price of $ 350,000, i.e. $ 35,000; and
c. An amount of $ 140,000 would be deposited and held in escrow pending the resolution of the 'transfer fee' dispute between the parties with regard to the transfer fee that was properly applicable to the [P]laintiff's sale of the franchise.
On May 12, 2017, Plaintiffs filed a complaint against Defendants that alleged a violation of the North Carolina Unfair and Deceptive Trade Practices Act; a claim for rescission of the Addendum; a claim for fraud based on intentional misrepresentation or concealments; a claim for negligent misrepresentation; and a claim for a breach of the duty of good faith and fair dealing. Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, and in the alternative, a motion for judgment on the pleadings pursuant to Rule 12(c) as to all of Plaintiffs' claims.
Defendants' motions were granted in an order filed on September 29, 2017, in which the trial court concluded that:
all of Plaintiffs' claims as alleged in Plaintiffs' Complaint accrued as of December 19, 2013 and are barred on the grounds that the one year contractual limitations period contained in the franchise agreement between Plaintiffs and Defendant Family Fare, LLC expired prior to Plaintiffs' asserting claims against the Defendants in this action, and thus the Defendants' motion is granted.
Plaintiffs argue that the trial court erred when it granted Defendants' motion to dismiss their unfair and deceptive trade practices claim ("UDTP"), as well as their claims for fraud, rescission, negligent misrepresentation, and breach of the duty of good faith and fair dealing. We address each argument in turn.
Standard of Review
"This Court must conduct a de novo review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." Leary v. N.C. Forest Products, Inc. , 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, aff'd per curiam , 357 N.C. 567, 597 S.E.2d 673 (2003).
On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.
Stunzi v. Medlin Motors, Inc. , 214 N.C. App. 332, 335, 714 S.E.2d 770, 773 (2011) (citation omitted). Moreover,
[a] statute of limitations defense may properly be asserted in a Rule 12(b)(6) motion to dismiss if it appears on the face of the complaint that such a statute bars the claim. Once a defendant raises a statute of limitations defense, the burden of showing that the action was instituted within the prescribed period is on the plaintiff. A plaintiff sustains this burden by showing that the relevant statute of limitations has not expired.
Id. (citations and brackets omitted).
Pursuant to Rule 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." N.C. Gen. Stat. § 1A-1, Rule 12(c) (2017). A Rule 12(c) motion for judgment on the pleadings
should be granted only when the movant clearly establishes that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law.
....
The trial court must view the facts and permissible inferences in the light most favorable to the non-moving party, taking all well-pleaded factual allegations in the non-moving party's pleadings as true.
Groves v. Cmty. Hous. Corp. of Haywood Cnty. , 144 N.C. App. 79, 86-87, 548 S.E.2d 535, 540 (2001) (citations, quotation marks, and brackets omitted). Additionally,
A judgment on the pleadings in favor of a defendant who asserts the statute of limitations as a bar is proper when, and only when, all the facts necessary to establish the limitation are alleged or admitted. In such an instance, the plaintiff bears the burden of showing that her claim is not barred on the face of the complaint.
Id. at 87, 548 S.E.2d at 540 (citations and quotation marks omitted).
I. Contractual Limitations
Plaintiffs argue that the trial court erred when it dismissed their claims for fraud, negligent misrepresentation, and breach of the duty of good faith and fair dealing because these claims did not accrue until December 1, 2016. We disagree.
While the statute of limitations for Plaintiffs' claims were generally three years, pursuant to N.C. Gen. Stat. § 1-52, with differing accrual provisions, North Carolina courts have recognized contractual provisions may further limit the time in which a party may bring a cause of action. See Turning Point Indus. v. Global Furn., Inc. , 183 N.C. App. 119, 124, 643 S.E.2d 664, 667 (2007) (enforcing "nine-month contractual" limitation because parties to a shipping contract may fix the time in which suit may be brought, even if a shorter time period is allowed by the general statute of limitations); F & D Co. v. Aetna Ins. Co. , 305 N.C. 256, 264, 287 S.E.2d 867, 872 (1982) (determining that insurance policy requiring insured to bring a "claim within twelve months of the date on which its cause of action accrues" was proper); Lowe v. U.S. Mut. Accident Ass'n , 115 N.C. 18, 19, 20 S.E. 169, 170 (1894) (enforcing a condition in an accident policy that stated no suit could be brought unless commenced "within 12 months" from the injury because it did not contravene the relevant statute).
In the present case, the Franchise Agreement's contractual limitation period stated:
Any and all claims and actions arising out of or relating to this agreement ... shall be commenced within one (1) year from the occurrence of the facts giving rise to such claim or action, or such claim or action shall be barred.
(Emphasis added). The section of the Franchise Agreement titled "Conditions on Transfer," stated in pertinent part:
(iv) the proposed transferee executes such documents as Family Fare may reasonably require to evidence that it has assumed the obligations of Franchisee under this Agreement, including, but not limited to, the then-current version of the Franchise Agreement ... Family Fare's then-current ancillary agreements to this Agreement , which documents may be substantially different than those executed contemporaneously with the execution of this Agreement....
....
(ix) Franchisee or the owner, as applicable, pays to Family Fare a transfer fee equal to ten percent (10%) of the purchase price of the franchise or interest being purchased....
(Emphasis added).
"It is well-established that a person has a duty to read a document he signs." Stunzi , 214 N.C. App. at 340, 714 S.E.2d at 777.
In this State it is held that one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he was wilfully misled or misinformed by the defendant as to these contents, or that they were kept from him in fraudulent opposition to his request, he is held to have signed with full knowledge and assent as to what is therein contained.... If unable to read or write, he must ask that the paper be read to him or its meaning explained.
Id. (quoting Williams v. Williams , 220 N.C. 806, 809-10, 18 S.E.2d 364, 366 (1942) ). "If the language of a contract is clear and only one reasonable interpretation exists, the courts must enforce the contract as written." State ex rel. Utilities Comm'n v. Thrifty Call, Inc. , 154 N.C. App. 58, 63, 571 S.E.2d 622, 626 (2002) (citation and quotation marks omitted).
Plaintiffs concede in their Complaint that Defendants had provided them with the same FD documentation and Franchise Agreement that Defendants had given the "other contract operators" when the parties met in November 2013 to discuss Family Fare's decision to convert all "contract operators" into franchisees. Plaintiffs also concede in their Complaint that Defendants again provided them with these two documents when the parties met on December 4, 2013. Defendants presenting the Addendum for the first time as a take-it-or-leave-it deal on December 19, 2013 had no bearing on Plaintiff Sanghrajka's duty to read and know the terms of the documents she received in November 2013 and executed on December 4, 2013.
As a result, on December 19, 2013, Plaintiffs knew that if they accepted the terms of any ancillary agreement, including the Addendum, a potential buyer would have to also accept any agreed transfer fee. In addition, Plaintiffs were responsible for knowing-based on the plain language of the Franchise Agreement that they signed-that they had one year to raise any claims arising from the transaction. Therefore, the Plaintiffs' bargained-for limitations period for claims of fraud, negligent misrepresentation, and a breach of duty of good faith and fair dealing began to run as of December 19, 2013.
Even if the contract did not impose a one-year contractual limitation period, these claims are barred by their three-year statute of limitations. N.C. Gen. Stat. § 1-52 (2017). The statute of limitations for these claims also accrued on December 19, 2013. See Hunter v. Guardian Life Ins. Co. of Am ., 162 N.C. App. 477, 485, 593 S.E.2d 595, 601 (2004) ("The Supreme Court of our State has held in numerous cases that in an action grounded on fraud, the statute of limitations begins to run from the discovery of the fraud or from the time it should have been discovered in the exercise of reasonable diligence." (citation and quotation marks omitted)). Plaintiffs should have filed their Complaint by December 19, 2016, but it was untimely filed on May 12, 2017. Therefore, the trial court properly dismissed these claims.
Because these claims accrued on December 19, 2013 and Plaintiffs did not file suit within one year pursuant to the Franchise Agreement, or within three years in accordance with Section 1-52, Plaintiffs' claims for fraud, negligent misrepresentation, and breach of the duty of good faith and fair dealing were properly dismissed by the trial court.
II. Continuing Wrong Doctrine
Plaintiffs also assert that the continuing wrong doctrine applies and tolls the statute of limitations for their claims. We disagree.
Our Supreme Court has recognized the continuing wrong doctrine as an exception to the general rule that a claim accrues when the right to maintain a suit arises. For the continuing wrong doctrine to apply, the plaintiff must show a continuing violation by the defendant that is occasioned by continual unlawful acts, not by continual ill effects from an original violation . Courts view continuing violations as falling into two narrow categories. One category arises when there has been a longstanding policy of discrimination.... In the second continuing violation category, there is a continually recurring violation.
Birtha v. Stonemor, North Carolina, LLC , 220 N.C. App. 286, 292, 727 S.E.2d 1, 7 (2012) (citations and quotation marks omitted) (emphasis added).
Here, Plaintiffs' were not subjected to a long-standing policy of discrimination. Plaintiffs' Complaint does not reference or state that Defendants' conduct was motivated by discrimination based on a protected trait or classification. See Radcliffe v. Avenel Homeowners Ass'n, Inc. , --- N.C. App. ----, ----, 789 S.E.2d 893, 903 (2016) (determining that plaintiff was not subjected to a long-standing policy of discrimination because plaintiff's complaint did not sufficiently allege that defendant's conduct was motivated by discrimination based on plaintiff's gender or religious beliefs), cert. denied , 369 N.C. 569, 799 S.E.2d 42 (2017).
Also, Plaintiffs' allegations do not amount to a continually recurring violation because the perceived ill effects stem only from the original perceived violation. Plaintiffs assert that "Defendants applied their discriminatory 50% transfer fee, versus the 10% imposed upon all other of their franchisees, against the Plaintiffs from December 19, 2013 until December 1, 2016," and "in November/December 2016, Defendants also imposed additional obligations, stemming from the same 2013 Amendment containing the discriminatory 50% transfer fee. Those additional obligations were imposed upon both the Plaintiffs, and upon the Plaintiffs' buyer." Plaintiffs' alleged continual unlawful acts by Defendant are not separate violations, but instead stem from the "ill effects" of the original alleged violation, which was imposing a 50% transfer fee on December 19, 2013.
Because the continuing wrong doctrine does not apply, the statute of limitations for Plaintiffs' claims for fraud, negligent misrepresentation, and breach of the duty of good faith and fair dealing was not tolled. Therefore, the trial court did not err in granting Defendants' motion to dismiss.
III. Rescission
Plaintiffs further argue that the Addendum is void and unenforceable. We disagree.
"Rescission is an equitable contract remedy that differs from its legal counterparts." Morris v. Scenera Research, LLC , 368 N.C. 857, 867, 788 S.E.2d 154, 161 (2016).
While legal remedies generally compensate the non-breaching party as if there were no breach, rescission treats both parties as if there were no contract. Rescission is not merely a termination of contractual obligation. It is abrogation or undoing of it from the beginning. As with all equitable remedies, rescission will not lend its aid in any case where the party seeking it has a full and complete remedy at law. A party may pursue rescission only if there is a material breach of the contract going to the very heart of the instrument.... A party may pursue rescission only when a material breach occurs and all legal remedies fall short of compensating the injured party for its loss.
Id. (citations and quotation marks omitted). Claims for rescission are subject to a three-year statute of limitations. N.C. Gen. Stat. § 1-52.
Here, Plaintiffs' Complaint never alleged that Defendants breached the Franchise Agreement. Because Plaintiffs have not argued that "a material breach occur[ed]," the Addendum cannot be rescinded. Additionally, Plaintiffs signed the Addendum on December 19, 2013 and filed suit on May 12, 2017. Even if Plaintiffs had alleged Defendants breached the Franchise Agreement, their claim would be barred because they failed to file their Complaint within three years pursuant to Section 1-52. Accordingly, the trial court properly dismissed Plaintiffs' claim for rescission.
IV. Unfair and Deceptive Trade Practices
Plaintiffs also assert that the trial court erred when it dismissed their UDTP claim because this cause of action did not accrue until December 2016. However, "taking all well-pleaded factual allegations in [Plaintiffs'] pleadings as true," Defendant was "entitled to judgment as a matter of law" pursuant to Rule 12(c). See Groves , 144 N.C. App. at 86-87, 548 S.E.2d at 540 (citations omitted). Therefore, we affirm the trial court's dismissal of Plaintiffs' UDTP claim.
"Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a) (2017). "In order to prevail under [the statute] plaintiffs must prove: (1) defendant committed an unfair or deceptive act or practice, (2) that the action in question was in or affecting commerce, (3) that said act proximately caused actual injury to plaintiff." Canady v. Mann , 107 N.C. App. 252, 260, 419 S.E.2d 597, 602 (1992). "To determine whether a particular act is unfair or deceptive, the court must look at the facts surrounding the transaction and the impact on the marketplace. The determination of whether an act is unfair or deceptive is a question of law for the court. The question of whether the defendant acted in bad faith is not pertinent." Bernard v. Cent. Carolina Truck Sales, Inc. , 68 N.C. App. 228, 230, 314 S.E.2d 582, 584 (1984) (citations, quotation marks, and brackets omitted).
"In most cases, there is nothing unfair or deceptive about freely entering a transaction on the open market." Bumpers v. Cmty. Bank of N. Va. , 367 N.C. 81, 91, 747 S.E.2d 220, 228 (2013). Moreover,
North Carolina law requires a showing of "substantial aggravating circumstances" to support a claim under the UTPA. And the courts have consistently recognized that § 75-1.1 does not cover every dispute between two parties. The courts differentiate between contract and deceptive trade practice claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law.
Broussard v. Meineke Disc. Muffler Shops, Inc. , 155 F.3d 331, 347 (4th Cir. 1998) (citations and quotation marks omitted). "[A]ctions for unfair or deceptive trade practices are distinct from actions for breach of contract, and a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." McDonald v. Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n , --- N.C. App. ----, ----, 816 S.E.2d 861, 866 (2018).
In the present case, Plaintiffs argue that Defendants first committed an unfair and deceptive trade practice by requiring Plaintiffs, and no other operators, to enter a "take-it-or-leave-it" contract, which would require them to operate both the Garrett Road and Glen Lennox stores. However, this conduct is not sufficient for an UDTP claim because "there is nothing unfair or deceptive about freely entering a transaction on the open market." Bumpers , 367 N.C. at 91, 747 S.E.2d at 228.
Plaintiffs further argue that Defendants committed an unfair and deceptive trade practices by presenting the "take-it-or-leave it" Addendum that changed the "transfer fee" from 10% to 50% without notice in December, and by convincing Plaintiffs that their buyer had to accept the new "transfer fee" in September 2016. As a result, Plaintiffs argue they suffered an actual injury on December 1, 2016 when Plaintiff Sanghrajka found out that she would suffer a loss of $ 30,000 in the sale of the franchise. However, these facts did not give rise to "substantial aggravating circumstances" to support a UDTP claim. Broussard , 155 F.3d at 347. As stated above, Plaintiffs knew as of November and December 2013 that if they accepted the terms of any ancillary agreement, including the Addendum, a potential buyer would have to also accept any agreed-to transfer fee. Thus, Plaintiffs' alleged injury was not a result of Defendants' conduct, but rather a result of Plaintiff Sanghrajka's failure to read the documents previously provided to her.
After viewing the facts and permissible inferences in the light most favorable to Plaintiffs, their UDTP claim is insufficient because it is solely premised on Plaintiffs' act of voluntarily entering into a contractual arrangement with Defendants. As previously discussed, "there is nothing unfair or deceptive about freely entering a transaction on the open market." Bumpers , 367 N.C. at 91, 747 S.E.2d at 228. Therefore, the trial court did not error in dismissing this claim.
Conclusion
For the reasons stated above, we affirm the trial court.
AFFIRMED.
Report per Rule 30(e).
Judge TYSON concurs.
Judge INMAN concurs in result only.