**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1354**

PAMELA H. SMITH; PAM'S CLEANING COMPANY, LLC,

        Plaintiffs - Appellants,

     v.

PREMIER PROPERTY MANAGEMENT, d/b/a The Edge Flats, d/b/a Deacon Station Townhomes,

        Defendant - Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  N. Carlton Tilley, Jr., Senior District Judge.  (1:18-cv-00081-NCT-JLW)

Submitted:  November 20, 2019           Decided:  December 5, 2019

Before AGEE and WYNN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Angela Newell Gray, GRAY NEWELL THOMAS, LLP, Greensboro, North Carolina, for Appellants.  Benjamin P. Fryer, Daniel J. Nobles, MOORE & VAN ALLEN, PLLC, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Pamela H. Smith and Pam's Cleaning Company ("PCC") appeal from the district court's grant of summary judgment to Premier Property Management on their claims under the Age Discrimination and Employment Act, 29 U.S.C. §§ 621-634 (2012) (ADEA); N.C. Gen. Stat. § 143-422.2;[1] and the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA). We affirm.

"[This court] review[s] a district court's grant of summary judgment de novo." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted). Summary judgment is appropriate "'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). In making this determination, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Variety Stores*, 888 F.3d at 659 (internal quotation marks omitted).

"The ADEA prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age 'because of' the person's age." *E.E.O.C. v. Baltimore Cty.*, 747 F.3d 267, 272 (4th Cir. 2014) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). To demonstrate a claim of age discrimination under the ADEA, Smith either had to provide direct evidence of discrimination or demonstrate a prima facie

---

[1] North Carolina law applies the same standards as the ADEA. *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 875 (M.D.N.C. 2003) (dismissing North Carolina wrongful discharge claim because the ADEA claim failed).

2

case of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-02 (1973); *see also Mereish v. Walker*, 359 F.3d 330, 333-35 (4th Cir. 2004) (applying *McDonnell-Douglas* framework to ADEA claims).  To establish a prima facie case of age discrimination under *McDonnell Douglas*, Smith had to demonstrate that: "(1) [she] is a member of a protected class, (2) [she] suffered an adverse employment action (such as discharge), (3) [she] was performing [her] job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action, and (4) [her] position remained open or was filled by a similarly qualified applicant outside of the protected class." *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006).

If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action. *Dugan v. Albemarle Cty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002).  Once the employer comes forward with such a reason, "the burden reverts to the plaintiff to establish that the employer's nondiscriminatory rationale is a pretext for intentional discrimination." *Heiko v. Colombo Sav. Bank,* 434 F.3d 249, 258 (4th Cir. 2006).  To do so, the plaintiff must "show that the employer's proffered explanation is unworthy of credence, thus supporting an inference of discrimination, or offer other forms of circumstantial evidence sufficiently probative of intentional discrimination." *Dugan*, 293 F.3d at 721.

First, Smith asserts that she demonstrated that Premier's expectations were an illegitimate sham designed to hide its discriminatory purpose.  Specifically, Smith contends that, as the Property Manager of the Edge Flats residential rental property, she was never tasked with increasing the occupancy rate; rather, her job was one of support and oversight.

3

Thus, she contends that, although she was terminated for *inter alia* not meeting occupancy

goals, such goals were not legitimate expectations of her position.

Of course, the burden is on Smith to demonstrate that Premier's stated reasons for

its conduct are false. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 146-48 (2000).

Smith's subjective belief that her supervisors were motivated by age bias does not suffice

to withstand summary judgment on this issue. *Goldberg v. B. Green & Co.*, 836 F.2d 845,

848 (4th Cir. 1988). Moreover, Smith's opinion that she was meeting expectations

demonstrates almost nothing about Premier's motivation in terminating her, as it is the

decisionmaker's perception which is relevant. *Holland v. Washington Homes, Inc.*, 487

F.3d 208, 217 (4th Cir. 2007).

Smith's arguments and factual recitation fail to address whether Premier honestly

believed that Smith bore partial responsibility for leasing issues. Contrary to Smith's

argument, the district court properly considered the record in the light most favorable to

Smith before rejecting her claim. The record is clear that, although Smith was not directly

responsible for leasing and marketing, she was responsible as a senior member of the team

for many tasks and departments that would lead both to new leases and lease retention.[2]

While there is conflicting evidence as to who the leasing staff reported to, Smith was still

a superior to the leasing staff, as shown by the termination of a staff member for

insubordination to Smith. In addition, in an email after her termination, Smith admitted

that she was working on a plan for increasing occupancy and pointed to increasing

---

[2] In fact, Smith received a bonus for every lease renewed.

4

occupancy numbers under her leadership. Further, it is undisputed that the occupancy rates at her termination were not meeting ownership expectations. Finally, Smith was not terminated for occupancy rates alone; instead, that was just one area where her superior determined that her performance was unacceptable. Smith simply presents no evidence undermining the conclusion that Premier believed that occupancy levels were unacceptably low and that Smith bore at least partial responsibility for that number.

Next, Smith contends that her supervisor could not have had any legitimate expectations for her performance, given that management was in desperate need of someone to fill the Property Manager position and, instead of advertising, the supervisor simply offered the job to Smith, who she was familiar with but who lacked any relevant experience. Smith's argument is illogical. She is essentially saying that, because she was actually unqualified for the position, her supervisor could not fire her for poor performance. However, Smith fails to show anything other than that her employer's expectations were perhaps lofty; however, such is insufficient to show that the expectations were not bona fide. *See Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179-80 (7th Cir. 1997) (noting that legitimate expectations means simply "bona fide expectations" and it is irrelevant whether an employer demands "too much" of its workers).

Next, Smith contends that, when the Edge Flats transitioned from a family-environment to a student environment, the result was a more youth-centric environment and Smith no longer fit in. Thus, Smith alleges that the given reasons for her termination were pretextual and simply relied upon in order to replace her with a younger employee. She points to several facts: most of the new hires were younger, the new hires

5

were permitted perks she was not (free rent, pets, extra training), and the fact that her supervisor referred to her as "mama" and referenced her age.

In this regard, the district court relied upon the strong inference of non-discrimination where the same decision-maker, who hired Smith when she was fifty-five years old, terminated her approximately six months later. In *Proud v. Stone*, 945 F.2d 796, 797-98 (4th Cir. 1991), we noted that where the same individual who hired the plaintiff also fired the plaintiff within a relatively short period of time, "a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *See also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (noting that because same person hired and fired plaintiff, powerful inference arose that decision not motivated by discriminatory animus). In *Proud,* we noted that where the hirer and firer are the same person, "claims that employer animus exists in termination but not in hiring seem irrational." 945 F.2d at 797.

We find that Smith's evidence was insufficient to overcome this inference.[3] While the occupancy rate had increased under Smith's supervision, it was still well below expectations. While other employees lived at the Edge Flats rent free, they were not similarly situated to Smith. As far as comments about Smith's age, Smith offered no detail or context. This evidence is insufficient to overcome the same-actor inference. *See Sagar v. Oracle Corp.*, 914 F. Supp. 2d 688, 696 (D. Md. 2012) ("It strains reason to

---

[3] Smith also relies on state case law, but admits that *Proud* is still controlling precedent in this court.

conclude that Sachar would seek to bring a nearly sixty year old man onto his team only to discriminate against him in pursuit of a 'younger' workforce a few months later.").[4]

Turning to the UDTPA claim, the relevant statute provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). The UDTPA is "intended to benefit consumers." *Dalton v. Camp*, 548 S.E.2d 704, 710 (N.C. 2001). Success on a claim under the UDTPA requires a plaintiff to establish (1) the defendant committed an unfair or deceptive act or practice; (2) the act or practice in question was in or affecting commerce; and (3) the act or practice proximately caused injury to the plaintiff. *Bumpers v. Comm. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013). A practice qualifies as unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and a practice is deceptive if it has the capacity or tendency to deceive." *Id.* at 228 (internal quotation marks omitted); *see Dalton*, 548 S.E.2d at 711 (requiring "some type of egregious or aggravating circumstances" to be alleged before the UDTPA's provisions may take effect).

---

[4] In a claim raised for the first time in her opening brief on appeal, Smith questions whether her supervisor was the sole decisionmaker, given that the termination form referred to "ownership" decisions. However, in district court, Smith did not raise this issue. In addition, in an argument raised for the first time in her reply brief, Smith avers that her supervisor was unaware of her age when Smith was hired. We decline to consider these arguments. *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) (holding that claims raised for the first time on appeal generally will not be considered, absent exceptional circumstances of plain error or fundamental miscarriage of justice); *First Virginia Banks, Inc. v. BP Exploration & Oil, Inc.*, 206 F.3d 404, 407 n.1 (4th Cir. 2000) (declining to consider issues raised for first time on appeal).

Whether an act or practice is unfair or deceptive under the UDTPA is a question of law. *Tucker v. Boulevard at Piper Glen LLC*, 564 S.E.2d 248, 250 (N.C. Ct. App. 2002). PCC improperly ended its contracts to clean two properties. Specifically, PCC generally cleaned the buildings after hours and was able to do so because it had keys to the facilities. PCC asserts that Premier took its keys, meaning that PCC had to complete its cleaning tasks during regular hours. Smith, the sole owner of PCC, alleges that her regular staff was unable to work these hours, and as she had to fill in, she was unable to find other daytime work. In addition, Premier did not pay PCC in a timely manner, hired another company to perform certain cleaning jobs, and removed business cards from display.

The district court ruled that, while PCC stated a claim for breach of contract, the behavior alleged did not rise to the level of an unfair or deceptive trade practice. A "mere breach of contract, even if intentional, is not an unfair or deceptive act under [the UDTPA]" by itself. *Bob Timberlake Collection, Inc. v. Edwards*, 626 S.E.2d 315, 323 (2006); *see PCS Phosphate Co. v. Norfolk S. Co.*, 559 F.3d 212, 224 (4th Cir. 2009). North Carolina law "does not permit a party to transmute a breach of contract claim into a . . . UDTPA claim . . . because awarding punitive or treble damages would destroy the parties' bargain." *PCS Phosphate*, 559 F.3d at 224; *see Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (collecting cases). However, if substantial aggravating circumstances accompany a breach of contract, then those circumstances can create an UDTPA claim. *Burrell v. Sparkkles Reconstruction Co.*, 657 S.E.2d 712, 717 (2008).

Smith claims that the parties were not in equitable power positions, resulting in Smith being forced to clean under difficult constraints. However, PCC was free to find

other clients and seek damages for breach of contract. PCC does not allege any fraud or actions that affected PCC's ability to operate in the marketplace. Instead, PCC alleges only that Premier ended their contractual relationship in an unprofessional and uncommunicative way. Such is insufficient to show an unfair or deceptive trade practice. *See, e.g., Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989) (affirming summary judgment and holding that "complete and abrupt abandonment of [a] contractual relationship" is neither unfair nor deceptive).

Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*